## DEN EX DEM. HOPPER v. DEMAREST AND AL.

1. The rule in Shelley's case is abolished in New Jersey as to devises by Statute. R. L. 774, § 1. R. S. 340, § 10.

2. Courts lean towards construing remainders vested, rather than contingent.

3. The estate of the children of the tenant for life, in devises, affected by the above section of the Statute, is a contingent, and not a vested remainder, during the life of the life-tenant.

4. A contingent remainder cannot be conveyed, except by estoppel.

5. The deed of a married woman derives its efficacy from the Statute, and the only effect given to it by Statute is to convey lands; she is not bound by any covenant in it, and is not estopped by any recital, express or implied, contained in it.

Den d. Hopper v. Demarest and al.

6. Husband is not entitled to curtesy in lands, of which his wife had not the seisin during coverture. When persons claiming *adverse title* are in possession, there is neither actual or constructive seisin.

7. On a verdict, with special case stated, the plaintiff holds the affirmative in the argument.

This was an action of ejectment brought in this court, on the several demises of Maria Louisa Hopper, and five other children of Maria, the deceased wife of Lewis Hopper, of Lewis· Hopper, of John Bush, and of Peter Wortendyke, and Rachel his wife.

It was tried before the Chief Justice, at the Bergen Circuit, in February, 1847. Upon the trial it was, by agreement of counsel and the direction of the court, submitted to the jury to find specially whether John Bush and Rachel Wortendyke, two of the lessors of the plaintiff, were lawful heirs of Catharine Salyer, deceased, the daughter of Johannus Perry; and by the jury it was found that they were her lawful heirs; and by the direction of the court a general verdict was rendered for the plaintiff, subject to the opinion of the court, upon the facts so found, and the facts agreed upon in the following state of the case:

Johannus Perry, of Orange Town, Rockland County, New York, by his last will, dated May 29, A. D. 1823, and duly signed and attested, to pass real estate in New Jersey, devised among other things, as follows: " I give unto my daughter Catharine, for and during her life, the remainder of my real estate. After her death, I will and require the same shall be equally divided among her heirs, and be unto them, their heirs and assigns, forever."

That the said Johannus Perry died in or about the year 1832, and was at the time of his death, and at the date of said will, seised in fee of the premises in question, which, with a lot of woodland, containing about 18 1-2 acres, adjoining the said premises, and some lands in Rockland County, constituted the remainder of his real estate, and were not included in any specific devise in his will.

That said testator, at the date of said will, had three children,

Margaret, Mary, and Catharine; that Catharine was, before
.the date of said will, lawfully married to Michael Salyer,
who is still living, and from whom she was never divorced;
that after said marriage, and during the cohabitation of said Mi-
chael Salyer and Catharine his wife, she had one child, Maria,
afterwards the wife of Lewis Hopper; that after the birth of
said Maria, Michael Salyer and his wife Catharine separated,
and lived apart, under written articles of separation; that dur-
ing said separation, the said Catharine was formally married to
Peter Bush, by the Rev. S. G—— a settled and ordained minis-
ter of the Gospel, settled at the Lutheran Church, at Saddle
River, in the County of Bergen.   And that after said ceremony
of marriage, they cohabited as man and wife, and that during
said cohabitation, John P. Bush and Rachel Wortendyke, two
of the lessors of plaintiff, were born of said Catharine.   John
was born about two years after said marriage by S. G.—— and
before the date of said will; Rachel was born a few years after
John, and after the date of said will, but in the lifetime of Jo-
hannus Perry.

That Maria, the daughter of Catharine Salyer, was married
to Lewis Hopper in 1824, and died May 22d, 1846, leaving six
children, born during said marriage, to wit: Maria Louisa, and
five others, the lessors of the plaintiff, and leaving no other de-
scendants.

That Catharine, the daughter of Johannus Perry, died in Sep-
tember, A. D. 1845, before her daughter Maria, and leaving no
other descendants than said Maria, John and Rachel.   That
said Catharine and Peter Bush, after said marriage ceremony
before S. G.—— cohabited as man and wife until her death,
and that her children, John and Rachel, were always called by
the name of Bush.

That Lewis Hopper and Maria his wife, by deed duly
acknowledged, dated April 13, 1832, recorded May 23, 1832,.
reciting a consideration of $500 witnessed that they had
"granted, bargained, sold, aliened, released, conveyed, and
confirmed" unto Peter Bush, and his heirs and assigns, "all the
right, title, interest, which they then had, or thereafter might
have," by virtue of the will of Johannus Perry, in the premises

in question, and in 17 acres in Rockland County, without any covenants.

That Peter Bush and Catharine, (called his wife,) by deed duly acknowledged, dated April 13, 1832, recorded October 23, 1833, reciting a consideration of $300, witnessed that they had "granted, bargained, sold, aliened, demised, released, conveyed and confirmed, unto Lewis Hopper and Maria his wife, the wood lot of 18 1-2 acres, adjoining the premises in question, and part of the lands devised by Johannus Perry, to his daughter Catharine, for her life, without any covenants."

That Peter Bush, by bond dated April 13, 1832, became bound to Lewis Hopper in the sum of $1,000, with a condition, (reciting that whereas John Bush and Rachel Bush, heirs of Catharine aforesaid, were minors, and incapable to transfer real estate,) that if said John Bush and Rachel Bush, when of age, should convey their interest in said 18 1-2 acre wood lot, or if said Peter Bush should pay said Lewis, his heirs or assigns, all loss or damage which he may sustain, by reason of their not so doing, that bond to be void.

That said bond, and said last mentioned deed, were the true and only consideration of the release executed by Lewis Hopper and wife, to Peter Bush. That Peter Bush and the said Catharine before that, and at the opening and reading of the will of Johannus Perry, had expressed themselves much dissatisfied with the limitations on Catharine's share, and he threatened, that if some arrangement was not made, he would sweep all the wood off the same; that after this, negotiations began, which ended in the above conveyance.

That Peter Bush, at and before the date of the release to him, was in possession of the premises, and that Lewis Hopper entered upon the 18 1-2 acre lot, and has sold the same to divers persons by deeds, with full covenants of warranty and seisin, for the sum of $850 in all.

That Peter Bush and Catharine, (called his wife,) by deed duly acknowledged, dated October 23, 1833, and never recorded, reciting a consideration of $1,982, witnessed, that they bargained, sold and conveyed to the defendants, Daniel D. Blauvelt and Garret J. Demarest, 38 72-100 acres, part of the

premises in question, in fee simple with full covenants of title.

That Peter Bush, at the date of said last mentioned deed, executed to said Garret J. Demarest and James Holderum, his bond, with a condition, reciting that said John Bush and Rachel Bush, as heirs of Catharine, were interested in said 38 28-100 acres, by virtue of said will, and that said bond should be void on their releasing to said Garret and Daniel, when they came of full age.

That Peter Bush and Catharine, (called his wife,) by deed dated October 23, 1833, duly acknowledged, but never recorded, conveyed by bargain and sale, with full covenants, 13 76-100 acres, the residue of the premises in question, to James Holderum, for the consideration of $602 27-100.

That Peter Bush, at the date of said deed, gave to James Holderum his penal bond with like recital, and as is contained in the bond above stated, to Garret J. Demarest and Daniel D. Blauvelt.

That John P. Bush, when of age, executed a deed to Garret S. Demarest and Daniel D. Blauvelt, dated December 31, 1842, duly acknowledged, but never recorded, reciting a consideration of one dollar, whereby he witnessed that he had "granted, bargained, sold, remised, released, and forever quit claimed" to said Garret and Daniel, in fee the lands so conveyed to them by Peter Bush, without any covenants of any kind, and executed a like release for like consideration, with like words of conveyance of same date, and also without any covenants of any kind, to James Holderum, for the lands so conveyed to him by Peter Bush.

The question for the opinion of the court is, whether on the facts above stated, and the facts specially found by the jury as above stated, the lessors of the plaintiff, or any of them, have any title to the premises in question, or any part thereof? and if the court shall be of opinion that the lessors of the plaintiff or any of them, have title to said premises, or any part thereof, then the verdict is to be entered for the plaintiff, as aforesaid, or for such part of the premises as the lessors of the plaintiff, or any of them, have title to; but if the court should be of opinion that the lessors of the plaintiff, or any of them, have not

title to the premises in question, or any part thereof, then a verdict is to be rendered for the defendants.

Argued before the CHIEF JUSTICE, and WHITEHEAD, J.

*A. S. Pennington*, and *Zabriskie*, for plaintiffs.

*W. Pennington*, for defendants.

The counsel for defendants claimed the right of opening and reply, as holding the affirmative in analogy to the practice on the argument of rules *nisi*, for new trials.

*Counsel for Plaintiffs.* We presume that the affirmative of the case is with us, here is a general verdict, subject to the decision of the court on a special case stated, and we must obtain the opinion of the court on that case, or we can never get judgment on that verdict. We are the *actors*, and must move the court and obtain the rule, or not recover.

*By the Court.* The affirmative is with the plaintiff on a special case as on a special verdict. In practice, he sets down the cause and moves the argument, and must affirmatively maintain that he is entitled to judgment on the facts stated.

*A. S. Pennington.* The first point is the construction or effect of this devise, as to the estate of Maria Hopper and John P. Bush. We insist, that during the life of their mother, they had only a *possibility*, or at most, a contingent remainder. A remainder to a person not ascertained, is contingent, not vested. 1 *Fearne.* 6.

This estate was contingent, not vested, until the death of Catharine. Before the statute, under the rule in *Shelley's case*, Catharine would have taken the fee. But the act, entitled "An act, further regulating the descent of real estates," passed June 13, 1820, *El. Dig.* 130 ; *R. L.* 774, alters the common law, and directs that estates shall vest after the death of first devisee.

The second point is, that a possibility or contingent remainder cannot pass by release or grant. 3 *Guise Dig. p.* 176 ; 2 *Smith L. C.* 454, and 455 ; 4 *Kent Com.* 260. This is only material as regards the share of Maria Hopper and John P. Bush. Rachel has never conveyed her share, and she is found to be heir of Catharine, and the bonds of defendants in this very transaction, recite the fact.

That a possibility, contingent remainder, or expectation cannot pass by release or grant. See further *Coke Lit.* § 446 ; *Shep. Touch.* 239 ; 11 *East.* 185 ; *Doe* v. *Tompkins,* 1 *Ves. Sen.* 374 ; *Whitfield* v. *Faussett,* 1 *Ves.* 411 ; *Wright* v. *Wright,* 9 *Mass.* 14, conveyance by heir, apparent below, not to pass any thing.

A third point is, if the estate was such that it did not pass by these deeds, are the lessors of the plaintiff bound, by having executed these deeds ? We maintain that they are not. There are certain common law conveyances that work an estoppel, such are a feoffment, a fine, and a lease, this is because of the express or implied warranty contained in them. 11 *Wend. p.* 121 ; *Pelletrean* v. *Jackson.*

But a release, or bargain and sale, does not estop, unless by virtue of express recitals, or covenants inconsistent with the title asserted by grantor. Except in case of mortgages, which are put on peculiar principles. *Coke Lit.* § 446 ; *Wright* v. *Bucknell,* 2 *B. & A.* 278 ; *Doe* v. *Ralf,* 2 *Nev. & Perry,* 648 ; *Jackson* v. *Bradford,* 4 *Wend.* 622 ; *Pelletreau* v. *Jackson,* 11 *Wend.* 118 ; 2 *Smith L. C.* 463.

And the dicta in *Goodright* v. *Bailey, Cowp.* 600 ; *Den* v. *Van Ness,* 5 *Halst.* 101 ; and *Den* v. *Winans,* 2 *Green,* 1, are reconcilable to this position.

In the case of the share of Maria Hopper, she being a *femme covert,* no estoppel can arise from her deed.

*W. Pennington,* contra.

We do not claim any title from Rachel Wortendyke. But Lewis Hopper and John Bush are two of the lessors of the plaintiff, and we hold the deeds of both of them, and claim that we have title to the shares conveyed by them.

Lewis Hopper is tenant by the curtesy of Maria's share, she was seised in law, if not in fact, and had seisin by the holding of Peter Bush under her deed, to give her husband an estate by curtesy.

The main question is on the construction of this will. At common law there was no difficulty ; by the rule in *Shelly's case,* Catharine would have been seised in fee under this devise.

This court in 1816, in *Den* v. *Laquear*, 1 *South.* 302, solemnly decided that the rule in *Shelley's case*, was law in this state.

But it is admitted, that the act of June 18, 1820, controls this devise and governs this case. By that Catharine had a life estate, and John, Maria and Rachel *the remainder*—and the question is, whether a *vested* or *contingent* remainder. If vested, it would pass by their conveyances, if contingent, it would not. Now a remainder is fixed or vested, when it passes to a *determinate person*, on a certain event. 2 *Black. Com.* 169. If *person* is certain, it is vested. *Den* v. *Provost & al.* 4 *John. R.* 61. Devise to A. and at her death *to her children*, which she shall have lawfully begotten, at her death. Here remainder was held *vested*. Our statute uses the same words, *the children*, gives it to the same persons, and by the same designation—the same rule of construction then ought to govern. In *Dingly* v. *Dingly*, 5 *Mass.* 535, devise to A, and at his death, to his sons. And *Wager* v. *Wager*, 1 *S. & R.* 378, devise to A. and her children, and their heirs. And in *Ives* v. *Legges*, 3 *Fearne* 438 ; and *Den* v. *English*, 2 *Harr.* 281, devise to A, after death, to his children, were held *vested* remainders. See also 4 *Kent*, 201 ; *Fearne.* 319.

As to the doctrine of estoppel, the cases are with us, that a man will not be allowed to claim what he has conveyed by his own deed, which he has signed, sealed and delivered. *Goodright* v. *Bailey, Cowp.* 600 ; *Jackson* v. *Bull*, 1 *John. C.* 81 ; *Jackson* v. *Murray*, 12 *John.* 201 ; *Jackson* v. *Stevens*, 13 *John.* 316 ; *Jackson* v. *Hasbrouck*, 3 *John. R.* 331 ; *Den* v. *Van Ness*, 5 *Halst.* 102 ; 1 *Greenl. Ev.* § 26. And whatever difficulties there may be in the technical doctrine of estoppel, the principle that a man ought not to be allowed to claim against his own deed, is so strongly founded in justice, that when the courts find it clearly laid down by such minds as Lord MANSFIELD, in *Goodright* v. *Bailey ;* Ch. J. KENT, in *Jackson* v. *Bull ;* and Ch. J. EWING, in *Den* v. *Van Ness ;* and by J. WASHINGTON, in the case there cited, they will not hesitate to apply the rule, because of contradictory decisions on doctrine of technical estoppel.

It is not claimed under this rule, that the children of Maria are prevented from claiming in opposition to their mother's

deed, but the title is in their father, who is tenant by the curtesy, and during his life they have no estate on which to recover.

*Zabriskie*, in reply.

There are two questions in this cause.

*The first is,* had Maria Hopper and John P. Bush, at the time of executing the conveyances made by them, such estate in the premises as they could convey, by release or bargain and sale.

*The second is,* If they had not such estates as would pass by these conveyances, are they or their heirs by these deeds prevented from setting up a title against them ?

As to the *estate,* we contend they had no vested estate, nor even any contingent remainder, but only a *possibility,* or *expectancy,* the same as any heir apparent has in the estate of an ancestor who is capable of alienating or devising.

1. The word *heirs* in a will is always a word of limitation, and is never a word of purchase or *designatio personæ* by construction, but only when made so by the plain language of the will. 4 *Kent Com.* 537 *n. c.* Sir *Thomas Plumer, in Cholmondley* v. *Clinton,* 2 *Jac. & Walk.* 65, 189 ; *Powell on Devises,* 301, 304, 311 ; and when lands are devised to the heirs of a person living, the devise cannot vest during the life of the designated ancestor ; " *Nemo est hæres viventis.*"

2. If heirs in this will is a word of limitation, there is then no dispute but that at common law, by the rule in *Shelly's case,* Catharine would have taken a fee.

3. But by " An act *further* regulating *the descent* of real estates," passed June 18, 1820, *R. L.* 774 : " In case any lands shall be devised to any person for life, and at his death to go to his or her heirs, then *after the death* of said devisee for life they *shall go to,* and *be vested in,* the children of said devisee as tenants in common, and if any child be dead, the part which would have come to him shall go to his issue." The object of this act was, first to destroy the rule in *Shelly's case,* which to

prevent the abeyance of the fee, defeated the object of the testator; and next, to regulate that such property should descend after the death of the ancestor (or life tenant) to such heirs as other lands descend to in New Jersey.

The act does not *in terms* abolish the rule in *Shelly's case,* and though that has been understood to be the effect of it, it may well be doubted if it does. It hinders the devisee for life from aliening or devising it away from his descendants, or from varying the descent among *them.* But in a case where the tenant for life dies without lineal heirs, this statute makes no provision —it does not interfere; and would it not then be held subject to the rule in *Shelly's case,* and go to the collateral heirs, or to the devisee, or even to the alienee of the tenant for life, if he had attempted to alien in fee?

The act is an act to *regulate descents,* not to construe wills, but to ascertain heirs after ancestor's death. No *estate* vests in the life of the ancestor, but only a possibility of being heir.

*By the court.* In whom does counsel hold the remainder in fee vests during the life of the devisee for life?

It may not be easy to solve *where,* according to the peculiar theory of the common law the fee is vested; but for this argument, it is immaterial whether in abeyance or in whom vested, if it is not vested in the children.

It is a great error to treat this statute, or the words of it, as if a part of the will. The will gives it to her " heirs;" who *they are,* the law points out; the heir is he " on whom the law casts the inheritance," and the object of this act is to ascertain in one peculiar case, who are those heirs. The general act of descents points them out in cases where ancestor dies *seised* and *intestate;* this designates them in this one case, even if ancestor has *aliened* or *devised.* The general act designates them by saying the land shall go to, or descend to, children, brothers, father, or next of kin, all *words of purchase,* but defining the new legal meaning of the term " *heir.*" But the term " heir " in a will generally, would surely not be held now to have a different meaning, or to be a word of purchase of same effect as " children," because the word " children " is used to define heir in statute. The maxim " *Nemo est haeres viventis,*" still stands.

Again, the express provisions of the act are utterly inconsistent with this title vesting before death of tenant for life. It says it shall *vest after* the death of devisee for life, but not in all *his children*, but only in such as are *then* living, and the descendants of such as are dead. If the remainder was vested, any child could alien or devise his share, or a creditor could levy on it in life of devisee for life, and this would defeat the statute. Thus it is plain, that under this act, as at common law, and under the statute of descents, the heir cannot be known until the death of ancestor. The N. Y. statute in such case declares that the persons who shall be heirs of the tenant for life, at his death shall take *as purchasers*. Even this, Kent says, (4 *Com.* 210 *n. c.*) is a contingent remainder. As to the second question, we maintain, that by deed of release, bargain and sale, or any other deed taking effect under the statute of uses, no estate passes, except what was *vested in the grantor* at the time of conveyance. Nor will they without *express* recitals or *covenants of warranty* pass any subsequently acquired estate in the lands described, *by estoppel*, or *estop* the grantor or his privies from recovering such after-acquired estate.

This proposition is supported by a long train of authorities, both elementary writers and adjudications of the highest grade, broken in upon by a few seemingly variant decisions or *obiter dicta*. *Litt.* § 446. "For no right passeth by a release, but the right which the releasor hath at the time of the release made." This whole section seems expressly penned for our case. 2 *Coke Litt.* 265, *a.* "If there was a warrantie it would bar by rebutter." 2 *Id.* 265 *b.* "A release will not bar where there is no right, but only a possibilitie, and so have I known it adjudged." *Sir Marmaduke Nevil's case*, 1 *Hob.* 46; *Goodtitle* v. *Morse*, 3 *T. R.* 369. Ld. Kenyon assents to doctrine in *Littleton. Doe d. Lumley* v. *Scarborough*, 3 *Ad. & El.* 2, (*a*) a strong case, held a release, bargain and sale by F. contingent remainderman to J. when seised of inheritance, did not bar F. when contingency happened. *Right* v. *Bucknell*, 2 *B. & Ad.* 278, (*b*) bargain, sale, and release, reciting that grantor had legal or equitable estate, did not bar him from recovering subse-

---

(*a*) 30 *E. C. L. R.* 1.  (*b*) 22 *E. C. L. R.* 73.

quently acquired legal estate. *Bensly* v. *Burdan*, 2 *Sim. &
Stu.* 519, (c) holds that deeds under statute of uses can only
estop by covenants or recitals. *McCrackin* v. *Wright*, 14 *John.*
193 ; *Jackson* v. *Vanderheyden*, 17 *Johns.* 167 ; *Jackson* v. *Hub-
bell*, 1 *Cow.* 616 ; *Jackson* v. *Winslow*, 9 *Cow.* 1 ; *Jackson* v.
*Bradford*, 4 *Wend.* 622 ; *Pelletreau* v. *Jackson*, 11 *Wend.* 110 ;
*Jackson* v. *Waldron*, 13 *Wend.* 178, are all cases in which this
doctrine is clearly laid down and applied ; In *Jackson* v. *Brad-
ford*, W. M. Price in his father's life, had by bargain and sale
conveyed to Bradford a house of his, P.'s father ; when the prop-
erty descended to him on his father's death, it was held that this
did not estop him. *Blanchard* v. *Brooks*, 12 *Pick.* 47 ; and
*Comstock* v. *Smith*, 13 *Pick.* 116, hold this doctrine strongly.

In *Whitfield* v. *Faussett*, 1 *Ves. Sen.* 387, Ld. Hardwicke held
that a fine itself would not bar the conusors where it was a
springing use ; "there cannot be a bar so long as it is in possi-
bilitie."

*Seymour's case*, 10 *Coke* 95, and the able argument and decis-
ion in *Doe* v. *Whitehead*, 2 *Burr.* 704, although they do not de-
cide these principles, take them for granted. 2 *Smith's Lead.
Cases*, 454 to 465, contains a full collection of the authorities
on this subject. *Edwards* v. *Rogers*, *Sir W. Jones* 459 ; *Treviv-
ian* v. *Lawrence*, 6 *Mod.* 208 ; 1 *Salk.* 276 ; and 2 *Ld. Raym.*
1028 ; *Weale* v. *Lower*, 2 *Pollexfen* 54, and *Rawlin's case*, 4 *Rep.*
52, which are quoted as estoppel cases, are cases of common
law conveyances, feoffments, fines, and leases, in which the op-
erative words imply warranty, or which by their nature pass an
estate greater than held by grantor. *Goodtitle* v. *Bailey*, *Cowp.*
600, in which the expression is *reported* to have been uttered by
Lord Mansfield, that in ejectment no man shall be allowed to
dispute his own solemn deed, was on a release of *a vested rever-
sion*, with *covenants*, for quiet enjoyment and *further assurance*.
The decision in *Jackson* v. *Bull*, 1 *Johns. cases* 90, and in *Jack-
son* v. *Murray*, 12 *John. R.* 202, were overruled in *Pelletreau* v.
*Jackson*, and were founded on the cases of lease, feoffment, &c.
which do not apply.

The doctrine laid down by Ewing, Ch. J. in *Den* v. *Van*

(c) 1 *E. C. Ch. R.* 567.

*Ness*, though too broadly expressed, is correct when applied to a mortgagor, as in that case; and the authorities cited by him are all cases of mortgages, leases, or feoffments which do estop, and the two cases in New York. Washington, J. in *Cooper* v. *Galbraith*, there cited (3 *Wash.* 549), refers to these authorities, but his whole opinion confirms the position taken, that there must be a covenant to bar after acquired title.

Again, this rule that a man cannot claim against his own deed, only bars the grantor himself. It cannot bar Maria Hopper's heirs. *Besides*, she was a *femme covert*, whose deed can have no other effect that that given it by statute *to convey* lands, its covenants and recitals are void against her. *Jackson* v. *Vanderheyden*, ub. sup.

The CHIEF JUSTICE delivered the opinion of the court.

The lessors of the plaintiff claim title to the premises in question under the will of Johannes Perry.

The devise is as follows:

I give unto my daughter Catharine, for and during her natural life, the remainder of my real estate. After her death, I will and require the same shall be equally divided among her heirs, and be unto them, their heirs and assigns, forever.

Upon the terms of this devise, Catharine, the daughter of the testator, at the common law would clearly have taken an estate in fee simple in the devised premises. There is a devise to her of a freehold estate, with a limitation over to her heirs in fee. The word "heirs," in such cases, under the rule in *Shelly's case*, is always a word of limitation, and not of purchase.

The remainder limited over to the heirs, is executed immediately in possession in the ancestor. And notwithstanding the express limitation in the devise to her of an estate for life, she becomes seised of an estate in fee. *Shelly's case*, 1 *Coke*, 104; *Fearne on Rem.* 21; 4 *Cruises Dig.* 369, *Tit.* 32, c. 22; *Den* v. *Laquear*, 1 *South*. 301.

This rule of construction has, however, been superseded in this state, by express legislative enactment. By the 1st section of the act, entitled "An act regulating the descent of real es-

tates," passed the 13th of June, 1820, *R. L.* 774, it is enacted,·
" That in case any lands, tenements, hereditaments or real es-
tate, situate, lying or being in this state, shall hereinafter be
devised by the owner thereof, to any person for life, and at the
death of the person to whom the same shall so be devised for
life, to go to his or her heirs, or to his or her issue, or to the
heirs of his or her body, then and in such case after the death
of such devisee for life, the said lands, tenements, hereditaments
or real estate, shall go and be vested in the children of such
devisee, equally to be divided between them as tenants in com-
mon in fee; but if there be only one child, then to that one in
fee, and if any child be dead, the part which would have come
to him or her, shall go to his or her issue, in like manner."

It is clear that this enactment controls the construction of the
devise now in question. The terms of the devise are directly
within the provisions of the act, I think it proper to remark,
moreover, tho' perhaps not material to the decision of the cause,
that I think it equally ·clear, notwithstanding the suggestions
to the contrary, made at the bar upon the ·argument, that this
enactment entirely counteracts the operation of the rule in *Shel-
ly's case,* and that this was its main end and design. Such I
believe has been the uniform construction of the act by the bar.
The same view was manifestly entertained by Mr. Griffith,
whose opinion, in the absence of judicial construction, is enti-
tled to the highest consideration.    4 *Am. Law Reg.* 1242, 994.

Indeed, upon this point, notwithstanding the apparent inap-
titude of the title of the act, the language of the statute is
too clear to admit of doubt.    It is contended, however, that un-
der the operation of this enactment, the children of the devisee
for life, take a *vested* not a *contingent* remainder in fee.

If the statute will admit of such construction, the courts in-
cline to construe estates vested rather than contingent.    *Ives* v.
*Legge,* 3 *D. & E.* 488 *note; Doe* v. *Provost,* 4 *John. R.* 65;
*Dingley* v. *Dingley,* 5 *Mass.* 535.

The statute first directs, that after the death of the devisee
for life, the lands shall go to and be vested in the children of
such devisee, equally to be divided between them as tenants in
common in fee; if this provision stood alone, I think it clear

that the children would take a vested remainder, that if children were born at the death of the testator, the remainder would then vest, if no children were then born, it would remain contingent until the birth of the first child, when the estate would vest in such child, and in either case the estate would open from time to time to take in after born children, such would clearly be the construction of this language, if used by the testator himself in framing his will, and such I apprehend should be the construction of the statute. *Fearne on Rem.* 158 ; 2 *Bla. Com.* 169, 170 ; 2 *Cruise's Dig.* 275, *Tit.* 16, *c.* 1 ; 4 *Cruise's Dig. Tit.* 32, *c.* 22, § 28 ; *Doe* v. *Perryn*, 3 *T. R.* 484 ; 4 *Kent*, 205 ; *Dingley* v. *Dingley*, 5 *Mass.* 535 ; *Doe* v. *Provost*, 4 *John. R.* 61 ; *Den* v. *English*, 2 *Harr.* 280.

Nor do I think this view of the construction of the act affected by the peculiar phraseology of the act, that the land shall go to, and be vested in, the children, *after the death* of the devisee for life.

This phraseology may with propriety be referred rather to the time of enjoyment than to the vesting of the title, and in order that the fee might not be in abeyance the court would incline to give it such construction.

But there is a farther provision in this section, viz : " that if any child be dead, the part which would have come to him or her, shall go to his or her issue in like manner : " This provision, whether through inadvertence or design, has, I apprehend, necessarily converted the estate in remainder, which else would have vested in the children of the devisee for life, into a contingent remainder. The whole provision of the section taken together is in substance this : After the death of the devisee for life, the lands shall go to and be vested in his children, and if any child die in the life-time of the tenant for life, the share of such child shall go to his children. It is tantamount to a devise to one for life, and on his death to his children, in case they survive him, and if any child die in the life-time of the tenant for life, leaving issue, then over to such issue. In such case, the remainder to the children cannot vest until the death of the tenant for life ; the estate in remainder depends upon the contingency of their surviving him.

It is obvious moreover to remark, that if the estate be vested in the children of the tenant for life, then that clause of the statute which provides that upon the death of any child, his share shall go to his issue, is rendered nugatory, for if the estate in remainder be vested, it may be aliened. It is liable to attachment; it may be taken in execution. The remainder over to the issue may thus be defeated, in direct contravention of the statute.

And, on the other hand, if the estate in remainder were not aliened in the life-time of the parent, it would upon his death, if vested, have descended to his children, without the aid of the statutory provision.

I think it clear, therefore that upon the sound construction of this statute, the children of the devisee for life take not a vested but a contingent interest in the estate devised, and that consequently, under the will of Johannus Perry, the children of his daughter Catharine, took not a *vested* but a contingent remainder upon the death of the testator. It depended upon the contingencies of their surviving their mother, and vested only upon her death and their survivorship.

The deed from Lewis Hopper and Maria his wife, to the defendants, under which they claim one-third of the devised premises, was executed in the life-time of Catharine, the daughter of the testator, and consequently while the estate of the grantors remained contingent. It is well settled, that a contingent remainder cannot be conveyed, except by way of estoppel, until the contingency happens. *Shep. Touch.* 288; 4 *Cruise Dig.* 370, *Tit.* 32, c. 22, § 2; 4 *Kent,* 260, (2d *Ed*).

The deed therefore, from Hopper and wife, was inoperative to pass title to the defendants, no title whatever could or did pass by the deed.

It remains to inquire whether the lessors of the plaintiff are estopped to deny the title of the defendants, or whether they will be permitted, in the absence of a technical estoppel, to set a title or claim adverse to that of the defendants.

I deem it unnecessary, for the settlement of this case, to examine or decide the point which was very fully discussed at the bar, whether a deed of bargain and sale, without warranty, will

estop the grantor, or bar him and those claiming under him from setting up a claim adverse to his own grant. Admitting the law to be as contended by the counsel of the defendants, that a grantor will not be permitted to claim against his own grant— the question still remains, whether a married woman, or those claiming under her, are subject to the same restriction. Lewis Hopper claimed title to the premises in question in right of his wife. The children who are lessors, claim title under their mother, not under Lewis Hopper.

As a general rule, all acts of a married woman are absolutely void. She acts solely under the cover or protection of her husband. Her acts, her admissions, her contracts, her representations, do not, as a general rule, bind her, or affect her property. She may pass her estate by deed, executed and acknowledged in the mode designated by statute, and in no other way. A deed thus executed and acknowledged, is good and effectual to convey her interest in the land thereby intended to be conveyed. But she is bound by no covenant in the deed. She is not estopped by an express warranty. As to her it is void—she is estopped by no averment or recital in the deed. They cannot be offered in evidence against her. It is even doubtful, whether her answer in Chancery under oath, made during coverture, is competent evidence against her, in an action after her husband's death.

Now the grantor is not permitted to allege that he had no title, in contradiction to his own deed, because it is said a grant implies a warranty, or more strictly, because by his deed the grantor professes to convey, and thereby tacitly avers, that he held an estate in fee simple, but no such averment can be imputed to the wife.

It is not ordinarily true, in point of fact, that she either avers, or professes, expressly or impliedly, that she has title in herself. She executes the deed for a specific purpose, being thereto specially authorised by the statute. And if such averment could be imputed to her, an implied undertaking on her part, could not have greater efficacy or a more binding force, than her express recital or agreement. A deed, therefore, executed by husband

and wife, either with or without warranty, cannot prevent the wife or those claiming under her from setting up a title adverse to the deed, or from averring that no title passed by her grant.

The declaration contains a count on the demise of Lewis Hopper, who claims as tenant by the curtsy the estate of his deceased wife.

There can be no recovery upon that count, nor can his alleged title in any way interfere with the right of recovery in his children.   To constitute the husband tenant by the curtsy, there must be an actual seisin of the wife.     Co. Litt. 29, 30 ; 2 Bla. Com. 127.

The wife of Lewis Hopper was never actually seised of these premises.   From the time that the estate vested in her, until her death, the defendants were in possession, not under her, but claiming by an adverse title.   She had neither the actual nor the constructive possession of the premises.   She had but a bare right to possess.

Upon the whole case, I am of opinion that the heirs of Maria Hopper are entitled to recover their mother's share, being one third, of the demised premises.

As to the other two-thirds there is no difficulty.   John Bush, it is admitted, has executed a valid conveyance of his share since the estate vested in him, and as to that share there can be no recovery.

There has been no conveyance of the share of Rachel, claimed by Wortendyke and wife, and for that third the plaintiff is entitled to judgment.

Let judgment be entered in favor of the plaintiff, for two equal undivided third parts of the premises in question.

WHITEHEAD and RANDOLPH JJ. concurred. CARPENTER and NEVIUS JJ. did not hear the argument, and gave no opinion.

REVERSED, 2 Zab. 610.   CITED in Kennedy v. Kennedy, 5 Dutch. 187;
Akers v. Akers, 8 C. E. Gr. 30; Wilson v. King, Id. 155; Zabriskie v.
Wood, Id. 543.